George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
FREEDOM LAW FIRM, LLC
8985 South Eastern Ave., Suite 100
Las Vegas, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: info@freedomlegalteam.com
*Co-Counsel for Plaintiff Charles Singer and the putative class*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

**CHARLES S. SINGER**, individually and on behalf of all others similarly situated

Plaintiffs,

v.

**DIVERSIFIED ADJUSTMENT SERVICE, INCORPORATED**
c/o CT Corporation System, Registered Agent
701 S Carson St. Ste 200
Carson City, NV 89701

Defendant.

Case No. 2:25-cv-1852

**CLASS ACTION COMPLAINT FOR DAMAGES**
**With Jury Demand Endorsed Hereon**

Plaintiff Charles S. Singer ("Plaintiff" or "Singer") individually and on behalf of all others similarly situated brings this Class Action Complaint for Damages against Defendant Diversified Adjustment Service, Inc. ("Diversified") and makes the following allegations based on personal knowledge as to facts pertaining to his own experience, and on information and belief, as well as investigation of counsel, as to all others and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Charles S. Singer is a natural person residing in Las Vegas, Nevada.

2. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) because he is a person allegedly obligated to pay a debt.

3. Diversified is a foreign limited liability company headquartered in Coon Rapids, Minnesota and is registered to do business with the Nevada Secretary of State.

4. Diversified is a debt collector as that term is defined by 15 U.S.C. § 1692a(6), as demonstrated by the allegations in this Complaint at all times pertinent to this Complaint since at least December 2024, Diversified was collecting on an alleged debt on either owned by or previously owned by T-Mobile.

5. Unless otherwise indicated the use of the name Diversified in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant named.

6. This court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1692k(d) and 28 U.S.C. §§ 1331, as well as pursuant to 28 U.S.C. § 1367 for state law claims.

7. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 as the majority, if not all, of the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this District. Defendant regularly conducts business in this District and Diversified regularly attempts to collect debts from consumers located in this District.

**INTRODUCTION**

8. The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debts. See 15 U.S.C. §§ 1692 *et seq.*

9. Congress passed the FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . , [e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers . . . , and [m]eans

other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692 (a), (b), and (c).

10. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e).

11. The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)"; see also *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

12. Reporting debts to credit reporting agencies is an attempt to collect debt. "Each reporting of the alleged debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). See *Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); See also *Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); accord *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997)

(reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)."

## FACTUAL BACKGROUND

13. Plaintiff incorporates the allegations contained in Paragraphs 1 through 12 as if fully restated herein.

14. In August 2022 Plaintiff entered into an agreement with T-Mobile for home internet service which included the rental of equipment ("Gateway") required to receive internet service.

15. Unfortunately, the service was not sufficient for Plaintiff's purposes and he canceled the service within three days.

16. As part of the cancellation of service, Plaintiff returned the Gateway to T-Mobile; which T-Mobile confirmed receipt of via two emails on or about September 28, 2022. A copy of the emails is attached hereto as collective **Exhibit 1.**

17. As of the cancellation of the home internet service and the return of T-Mobile's Gateway device Plaintiff owed no money to T-Mobile.

18. In January of 2025 Plaintiff began receiving, via email, dunning notices from Diversified seeking to collect $88.00 for an alleged T-Mobile account.

19. Plaintiff replied to Diversified's email explaining that the account was only active for three days and that the equipment had been returned at the time of cancellation. See email and reply dated January 6, 2025 attached as **Exhibit 2.**

20. On or about March 6, 2025 Plaintiff reviewed his credit files (Equifax, Experian, and Trans Union) and observed that Defendant Diversified was reporting the alleged debt to Experian.[1]

[1] At that time Defendant was assumingly not reporting the debt to Equifax or Trans Union as the tradeline did not appear on those two reports.

21. In response, Plaintiff on or about April 7, 2025 sent a detailed dispute to Experian specifically disputing Defendant Diversified' tradeline and providing information to Experian of the cancellation of the account and return of equipment. *See* **Exhibit 3** – Letter to Experian dated April 7, 2025.

22. In response to the dispute (Exhibit 3) either Defendant or Experian deleted the Diversified tradeline from the Experian credit file.

23. On August 23, 2025 Plaintiff reviewed his credit files which showed that Defendant Diversified is reporting on Plaintiff's Equifax credit file that the debt is owed with a balance of $88 as recently as August 21, 2025. *See* **Exhibit 4** – Relevant portion of Equifax credit file obtained August 23, 2025.

24. As demonstrated by Exhibit 4, Defendant Diversified furnished information to Equifax updating the entire tradeline on or about August 21, 2025 and failed to list the debt as disputed despite Plaintiff having disputed the debt both directly to Diversified and to Experian as set out *supra*. *See* Exhibit 4.

25. Defendant's actions to collect the alleged debt caused Plaintiff to suffer actual damages including, but not limited to Plaintiff's incursion of the certified mailing costs for credit disputes and the incursion of costs in hiring an attorney to stop the improper reporting and collection attempts.

26. In addition to the damages above, the Plaintiff was also forced to incur additional actual damages in having to hire an attorney to prosecute this case and the continued emotional distress in the form of anxiety, anger, and confusion as to why Defendant Diversified even began collecting on a debt that Plaintiff did and does not owe; and continues to report the debt to Equifax.

27. The expenses incurred and the time wasted by Plaintiff in attempting to contact Defendant and mailing the dispute letter (Exhibit 3) constitutes a concrete and particularized injury to establish standing. See, e.g., *Ebaugh v. Medicredit, Inc.*, 2025 U.S. App. LEXIS 8530 (8th Cir. April 11, 2025), *Healy v. Milliman, Inc.*, 2022 WL 1061921 (W.D. Wash. 2022), *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021).

28. Mr. Singer's experience is apparently not unique; a review of the Consumer Financial Protection Bureau's Consumer Complaint Database shows that over 200 consumers in the last year alone have lodged similar complaints – i.e. collecting debts allegedly not owed or in an incorrect amount, reporting debt allegedly not owed or in an incorrect amount to the credit reporting agencies, and failing to report debts as disputed to the credit reporting agencies following receipt of disputes.[2]

## CLASS ALLEGATIONS

29. Singer brings this action individually and on behalf of all others similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

30. **Class Definitions**. Singer seeks to certify the following classes

**The FDCPA Class**

All consumers throughout the United States (1) to whom Diversified mailed a notice for validation of debts, (2) who provided Diversified with a written or oral dispute as to the validity of the debt, and (3) to whom Diversified reported derogatory credit information within sixty days of receive of the dispute of the validity of the debt without completing a debt validation from one year prior to the date of this class action complaint through the date of class certification.

---

[2] *See* https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=Diversified%20Adjustment%20Service%2C%20Inc.&date_received_max=2025-08-23&date_received_min=2024-09-01&has_narrative=true&page=1&searchField=all&searchText=Diversified%20Adjustment%20Service%2C%20Inc.&size=100&sort=created_date_desc&tab=List. (Last visited Sept. 14, 2025).

> **The NRS Class**
> All Nevada consumers (1) to whom Diversified mailed a notice for validation of debts, (2) who provided Diversified with a written or oral dispute as to the validity of the debt, and (3) to whom Diversified reported derogatory credit information within sixty days of receive of the dispute of the validity of the debt without completing a debt validation from one year prior to the date of this class action complaint through the date of class certification.

31. Excluded from the Class and Subclasses are the following individuals and/or entities: Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

32. Plaintiff reserves the right under Fed. R. Civ. P. 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues.

33. Plaintiff reserves the right under Fed. R. Civ. P. 23(c)(4) to seek certification of particular issues.

34. Numerosity**:** A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class (which Plaintiff is informed and believes based on the review of the CFPB Consumer Complaint Database referenced *supra*, and on that basis, alleges that the total number of persons is in the hundreds and can be determined by analysis of Defendant's records) are so numerous that joinder of all members is impractical, if not impossible.

35. Ascertainability: The proposed classes are ascertainable because each is defined by reference to objective criteria.

36. Typicality: Plaintiff's claims are typical of the claims of the members of the class because all of the class members' claims originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

37. Like all members of the proposed Class, Plaintiff was subject to illegal collection activity by Defendant in violation of 15 U.S.C. § 1692, *et seq*.

38. Adequacy of Representation: Plaintiff is an adequate representative of the Classes in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

39. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

40. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

41. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

42. There will be little difficulty in the management of this action as a class action.

43. Commonality: Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

44. Among the issues of law and fact common to the class are:

a. Defendant's violation(s) of the FDCPA as alleged in this class action complaint;

b. Defendant's practice of furnishing derogatory information within 60 days of receiving a debt validation dispute from a consumer without validity the debt;

c. Defendant's practice of continuing to collect or attempt to collect a debt before providing verification of the debt when the debt has been disputed in writing by the consumer within the validation period.

d. The availability of statutory damages; and

e. The actual damages suffered, if any, by the Plaintiff and class members by the conduct of the Defendant which violates the FDCPA.

45. Absent a class action, Defendant's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

46. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

**COUNT ONE:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1681, *et seq.***
***On behalf of the Plaintiff and the FDCPA Class***

47. Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

48. Plaintiff and the Class members are each a consumer as defined in 15 U.S.C. § 1692(a)(1).

49. The alleged debts of the Plaintiff and each FDCPA Class member that were the subject of the Defendant's collection attempts are debts, as defined in 15 U.S.C. § 1692(a)(5), as they were each incurred for personal, household, or family use.

50. Defendant is a debt collector as the term is defined in 15 U.S.C. § 1692(a)(6) as it was seeking to collect a debt on behalf of a third-party.

51. The letter and/or credit reporting sent/placed by Defendant are each a communication as defined by 15 U.S.C. § 1692a(2) and carried out in an attempt to collect a debt.[3]

52. Based on the allegations and exhibits herein, *supra*, and Defendant's actions in attempting to collect against Plaintiff and Class Members each particular debt at issue constitute a violation of the FDCPA, including, but not limited to the following sections:

a. 15 U.S.C. § 1692(d)—Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person; and

---

[3] Reporting debts to credit reporting agencies is an attempt to collect debt. "Each reporting of the alleged debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). See *Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); See also *Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); accord *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)."

b. 15 U.S.C. §1692e(2)(A) - The false representation of the character, amount, or legal status of any debt;

c. 15 U.S.C. §1692e(8) - Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

d. 15 U.S.C. §1692e(10) - The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . .

e. 15 U.S.C. § 1692(f)—Engaging in any unfair or unconscionable means to collect or attempt to collect the alleged debt

53. As a consequence of Defendant's conduct, Plaintiff and Class members suffered from actual damages, including, but not limited to the retention of legal counsel to defend against the collection actions, legal fees, time wasted, costs, and expenses, and damage to their credit standing.

54. As a consequence of Defendant's conduct, Plaintiff and Class members suffered actual non-economic damages in the form of emotional distress primarily in the forms of stress, anxiety, and frustration.

55. Plaintiff and Class members were harmed by and through the aforementioned violations committed by Defendant and are entitled to an award of statutory damages, actual damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692(k)(a).

56. The expenses incurred and the time wasted by Plaintiff as described *supra* constitutes a concrete and particularized injury to establish standing. See, e.g., *Healy v. Milliman, Inc.*, 2022 WL 1061921 (W.D. Wash. 2022), *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943

(11th Cir. 2021).

**COUNT TWO:**
**VIOLATIONS OF NRS 598**
***On behalf of the Plaintiff and the NRS Class***

57. Plaintiff realleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

58. Nev. Rev. Stat § 649.370 states that "A violation of any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1682 *et seq*., or any regulation adopted pursuant thereto, shall be deemed to be a violation of this chapter."

59. As set forth in Count One, *supra,* the actions of Diversified in attempting to collect the debt against Plaintiff after disputing the debt with Diversified in writing, and having received the underlying Credit Dispute from Experian, Diversified's continued collection activity in including reporting the tradeline on Plaintiff's Credit Files[4] constitute violations of the FDCPA and thus a violation of Nev. Rev. Stat. § 649.370.

60. NRS 41.600(1) states that an action may be brought by any person who is a victim of consumer fraud.

---

[4] Reporting debts to credit reporting agencies is an attempt to collect debt. "Each reporting of the alleged debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). See *Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); See also *Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); accord *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)."

61. NRS 41.600(2) defines "consumer fraud" as a "deceptive trade practice" as defined in NRS 598.0915 to NRS 598.0925.

62. Nev. Rev. Stat. § 598.0915(15) defines deceptive trade practices to include "knowingly mak[ing] any other false representation in a transaction."

63. Nev. Rev. Stat. § 598.0923(1)(c) defines deceptive trade practices to include when a person "knowingly ... [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services.

64. Diversified engaged in unfair acts or practices in the conduct of trade or commerce in violation of Nev. Rev. Stat. § 598.0915 and/or § 598.0923 by engaging in the acts and omissions set forth in the Complaint *supra*, including, but not limited to, attempting to collect a debt Singer did not owe.

65. Diversified's actions constitute unfair acts or practices in the conduct of trade or commerce in violation of Nev. Rev. Stat. § 598.0915 and/or § 598.0923. Each and every attempt to collect the alleged debt constitutes a separate and independent violation Nevada law which should be enjoined from further violations and for which Plaintiff is entitled to recover actual damages, punitive damages, along with attorney's fees and costs pursuant to Nev. Rev. Stat. § 41.600(1)-4 and § 42.005.

**WHEREFORE**, Plaintiff Charles Singer on behalf of himself and each member of the proposed class respectfully requests the following relief from Diversified Adjustment Service, Inc.:

A. That the Court declare, adjudge, and decree this action related to Count One is a proper class action and certify the proposed Class, and/or any other appropriate subclasses under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3), including the designation of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

B. For an award of actual damages in favor of the proposed FDCPA Class against Defendant for the allegations in Count One as allowed by law and in an amount to be determined.

C. For an award awarding Plaintiff and members of the FDCPA Class statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B) in an amount up to the lessor of $500,000 or 1 per centum of the net worth of the Defendant for the violations as to the allegations in Count One;

D. For an award awarding Plaintiff and members of the Class reasonable costs, expenses, and attorneys' fees incurred in this action, pursuant to 15 U.S.C. § 1692k(a)(3) as to the allegations in Count One;

E. For an award to Plaintiff and members of the NRS Class of all actual damages in a total amount to be determined at trial against Defendant as to the allegations in Count Two pursuant to Nev. Rev. Stat. § 41.600(3)(a);

F. For an entry permanently enjoining Defendant from violating the sections of Nevada Revised Statutes set forth herein pursuant to Nev. Rev. Stat. § 41.600(3)(b);

G. For an award to Plaintiff and members of the NRS Class of punitive damages in a total amount to be determined at trial against Defendant as to the allegations in Count Two pursuant to Nev. Rev. Stat. § 42.005;

H. For an award awarding Plaintiff and members of the NRS reasonable costs, expenses, and attorneys' fees incurred in this action, pursuant to Nev. Rev. Stat. § 41.600(3)(c) as to the allegations in Count Two; and

I. For all other relief that this Court deems just and proper.

Dated: September 30, 2025

FREEDOM LAW FIRM

/s/ Gerardo Avalos
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 100
Las Vegas, Nevada 89123

Brian D. Flick (OH #0081605)*
Brent S. Snyder (OH #0104059)*
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com
*Pro Hac Vice Motions Anticipated

*Counsel for Plaintiff Charles Singer and the putative class*

**JURY DEMAND**

Plaintiff Charles Singer hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
*Co-Counsel for Plaintiff Charles Singer and the putative class*